### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TIMOTHY O'BANNON, *as Durable Power of Attorney for Tamara O'Bannon*, <br><br> Plaintiff, <br><br> v. <br><br> RECOVER-CARE MEADOWBROOK REHABILITATION LLC, et al., <br><br> Defendants. | Case No. 24-2060-JWB-ADM |

## MEMORANDUM AND ORDER

This is a medical malpractice case alleging negligence by defendants Recover-Care Meadowbrook Rehabilitation LLC and MRC SNF Management LLC ("Defendants") surrounding a fall suffered by Tamara O'Bannon at Defendants' acute care hospital, which resulted in a permanent disability. (ECF 10.) This matter is now before the court on plaintiff Timothy O'Bannon's ("O'Bannon") Motion for Sanctions. (ECF 27.) By way of this motion, O'Bannon seeks sanctions on two grounds: (1) pursuant to Fed. R. Civ. P. 16(f)(1)(C) for Defendants' failure to provide a complete medical chart (including a progress note regarding Tamara O'Bannon's fall) as part of their initial or supplemental disclosures; and (2) pursuant to Fed. R. Civ. P. 30(d)(2) for frustrating a deposition by providing the witness documents from which to answer a pending deposition question without O'Bannon's counsel's knowledge. For these actions, O'Bannon asks the court to order Defendants to pay for the costs of the deposition and the subsequent reopening of that deposition, as well as the costs associated with O'Bannon's retained experts' expedited review of the additional documents that Defendants disclosed during the deposition. (ECF 27, at 16.) O'Bannon also suggests that the court, in its discretion, should award attorneys' fees if

1

warranted. (*Id*.) For the reasons explained below, O'Bannon's motion is granted in part insofar as the court finds that Defendants' incomplete document production frustrated and impeded the witness's deposition and therefore orders Defendants to pay the court reporter fees and costs incurred by O'Bannon for that deposition.

## I. RELEVANT BACKGROUND

The parties exchanged Rule 26(a)(1) disclosure documents in early April. (ECF 27, at 2.) Defendants' early Rule 26(a)(1) document production included a hospital medical chart consisting of 1,328 pages. (*Id*.) The court entered a scheduling order on July 30 that included an August 8 deadline for the parties to exchange copies of the documents described in their Rule 26(a)(1) disclosures. (ECF 18, at 4.) The docket does not reflect any exchange of Rule 26 disclosures on that date. But the parties later filed certificates of service stating that O'Bannon and Defendants served their Rule 26 disclosures on September 16 and 20, respectively. (ECF 25, 26.)

O'Bannon deposed Defendants' Chief Nursing Officer Carmen Patty ("Patty") on September 6, beginning at 2:31 in the afternoon, via Zoom videoconference. (ECF 27-2, at 2, 6.) Patty was deposed in her individual capacity, not in the capacity of a Rule 30(b)(6) witness. After less than an hour of questioning, Defendants' counsel requested a break. (*Id*. at 46.) When the deposition reconvened, Defendants' counsel told O'Bannon's counsel that records had been provided to the witness on counsel's iPhone in case she wanted to refer to them, and further explained that the iPhone was needed because the iPad normally used to view such records was being used for the Zoom deposition. (*Id*. at 46-47.) Patty then acknowledged that she had made "some significant mistakes" in her earlier testimony when she was going on memory alone. (*Id*. at 47.) O'Bannon's counsel noted for the record that Patty had brought some hard-copy documents with her following the break and asked her to identify the records, which she did, noting that one

was a progress note and the other was one page of a care plan. (*Id.* at 47-48.) O'Bannon's counsel began questioning the witness about the "significant" errors she wanted to correct, and she responded by reading from the progress note, which was not Bates-labeled and did not appear to have been included in the in the medical chart defendants had previously produced. (*Id*. at 48-50.) After another break during which Defendants' counsel emailed the document to O'Bannon's counsel, the parties confirmed that this progress note was not included in the Bates-labeled medical chart Defendants had previously produced. O'Bannon's counsel therefore requested "a copy of the medical chart that has every entry in it, regardless of what it is," and Defendants' counsel agreed to produce the complete chart. (*Id*. at 51.)

After yet another break, the deposition continued. So did the problems. O'Bannon's counsel continued questioning the witness as to her understanding of Tamara O'Bannon's fall incident and turned back to the progress note. (*Id*. at 56-59.) At one point, O'Bannon's counsel asked Patty a question about where Tamara O'Bannon fell and, clearly frustrated, asked what document "in this world on Planet Earth" would provide that answer. (*Id*. at 59.) When Patty answered, O'Bannon's counsel became irritated because the witness was not talking about the progress note any more but was referencing a different document to answer the question, which led to Defendants' counsel expressing his own irritation and blaming the Zoom format for the confusion. (*Id*. at 59-60.) O'Bannon's counsel then declared that he was "going to pause this deposition" and "take this up with the court." *(Id.* at 61.) The deposition ended at 4:13pm. (*Id.* at 62.)

On September 11, Defendants made a supplemental document production of 7,049 pages of Tamara O'Bannon's medical chart. (ECF 27, at 8.) Patty's September 6 deposition and

3

Defendants' September 11 supplemental production are the focus of O'Bannon's Motion for Sanctions filed on September 23.

## II.   ANALYSIS

### A.   Meet and Confer

O'Bannon's motion begins by arguing that he is under no obligation to meet and confer with opposing counsel pursuant to D. Kan. Rule 37.2 regarding a motion for sanctions under Fed. R. Civ. P. 16 and 30 "as this motion is not related to a discovery dispute." (ECF 27, at 1 n.1 (citing cases).) Without deciding whether D. Kan. Rule 37.2 applies to this dispute, the court finds that a meet-and-confer in this instance would have been futile because the issues raised in this motion are clearly disputed.[1]

### B.   Sanctions for Late Document Production

O'Bannon seeks sanctions pursuant to Fed. R. Civ. P. 16(f)(1)(C) for Defendants' failure to provide a complete medical chart (including a progress note regarding the fall suffered by Tamara O'Bannon) when they served their Rule 26(a)(1) initial disclosure documents in April or by the scheduling order's August 8 deadline to disclose documents described in their Rule 26(a)(1) disclosures. (ECF 27, at 5-6, 10-12.) O'Bannon contends that Defendants "committed two sanctionable offenses" under Rule 16. First, O'Bannon contends the scheduling order required Defendants to provide the complete medical chart as part of their initial disclosures served in April, and Defendants intentionally excluded from their initial disclosures "a single progress note that hurt the defense of their case and helped the Plaintiff." Second, O'Bannon contends that

---

[1] O'Bannon's motion is over the page limit provided in D. Kan. Rule 7.1(d) regardless of whether the motion is a "discovery-related" motion (limited to 10 pages) or "other" motion (limited to 15 pages). In the future, the court expects parties to abide by the page limits set forth in the Local Rules.

Defendants violated the scheduling order when they produced 7,049 pages of additional pages of Tamara O'Bannon's medical chart after the Scheduling Order's August 8 deadline to exchange all Rule 26 documents.  (ECF 27, at 10-11 (citing FED. R. CIV. P. 16(f)(1)(C) (providing for sanctions for failing to obey a scheduling order)).)

The court is not persuaded that sanctions under Rule 16(f)(1)(C) are warranted here.  Although Rule 16(f)(1) does authorize certain sanctions set out in Rule 37, and Rule 16(f)(2) requires the court to "order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule," it also exempts a person from such sanctions if "the noncompliance was substantially justified or other circumstances make an award of expenses unjust."  FED. R. CIV. P. 16(f)(2); *see also Williamson v. Metro. Prop. & Cas. Ins. Co.*, No. 15-0958, 2018 WL 3421327, at *4 (D.N.M. July 13, 2018) (the award is mandatory in the absence of substantial justification or a finding that other circumstances make an award unjust).  "The purpose of this provision is two-fold: (1) to ensure efficient case management and disposition and (2) to compensate opposing parties for the inconvenience and expense resulting from an adversary's noncompliance with these objectives."  *G.J.B. & Assocs., Inc. v. Singleton*, 913 F.2d 824, 831 (10th Cir. 1990).  Courts have broad discretion under Rule 16(f) to "use sanctions where necessary to insure not only that lawyers and parties refrain from contumacious behavior, already punishable under the various other rules and statutes, but that they fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial." *Matter of Sanction of Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984) (en banc); *see also* FED. R. CIV. P. 16(f) advisory committee's note to 1983 amendment ("[E]xplicit reference to sanctions reinforces the rule's intention to encourage forceful judicial management.").

Here, Defendants have explained why the medical chart they originally produced inadvertently excluded some types of records. They explain that, unbeknownst to them at the time, their EMR system software update reverted to default settings. This suffices to show that Defendants did not intentionally withhold documents from their initial disclosures. (ECF 31, at 1-2, 4.) Defendants also explain that they did not know the medical chart produced with Defendants' initial disclosures was incomplete until Patty's deposition on September 6. Defendants therefore did not know on August 8 that their initial disclosures document production was incomplete and needed to be supplemented. Once Defendants learned at Patty's September 6 deposition that their prior production of the medical chart was incomplete, they promptly supplemented their production on September 11. (*Id*. at 4, 6-7.) Moreover, O'Bannon is not prejudiced by the late production (other than as explained below) given that the court extended the schedule at O'Bannon's request so that his experts could have time to review the new medical records and O'Bannon could depose additional witnesses whose testimony became relevant following the production of these new documents. (ECF 36.) Under these circumstances, the court will not award sanctions under Rule 16(f)(1)(C) for Defendants' September 11 production of 7,049 pages of Tamara O'Bannon's medical chart.

### C. Sanctions for Conduct During Patty's Deposition

O'Bannon's secondly contends that sanctions are warranted under Fed. R. Civ. P. 30(d)(2) because Defendants' counsel provided Patty with a medical record not previously produced to O'Bannon and allowed her to reference this document to answer a pending deposition question without O'Bannon's counsel's knowledge. (ECF 27, at 6, 12-14.) Rule 30(d)(2) permits the court to "impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the

deponent." According to the Advisory Committee's Note to the 1993 Amendments to Fed. R. Civ. P. 30(d), sanctions may be authorized "not only when a deposition is unreasonably prolonged, but also when an attorney engages in other practices that improperly frustrate the fair examination of the deponent . . . ."

To show that Defendants' counsel engaged in such practices, O'Bannon contends that his counsel had no knowledge that Defendants' counsel was showing this medical record to Patty on his iPhone out of view of the camera during Patty's deposition. (ECF 27, at 12-14.) The record demonstrates otherwise. The record shows that, when the deposition reconvened after a break, Defendants' counsel alerted O'Bannon's counsel that he had provided records to the witness on his iPhone in case she wanted to refer to them. (ECF 27-2, at 46-47.) O'Bannon's counsel then noted on the record that Patty had brought some hard-copy documents with her following the break and asked her to identify the records, which she did. (*Id*. at 47-48.) O'Bannon's counsel did not object or request that the documents not be used by the witness. Rather, O'Bannon's counsel began questioning the witness about the progress note (which was not Bates-labeled) and, after a break during which Defendants' counsel emailed the two documents to O'Bannon's counsel, they discovered that this progress note was not included in the medical chart previously produced. O'Bannon's counsel requested "a copy of the medical chart that has every entry in it, regardless of what it is" and Defendants' counsel agreed to produce the complete chart. (*Id*. at 48-51.) The deposition continued. At one point O'Bannon's counsel asked Patty a question about where Tamara O'Bannon fell, and O'Bannon's counsel became irritated because the witness was not talking about the same document he was asking about, and then Defendants' counsel became irritated because the confusion stemmed from the Zoom format. (*Id*. at 59-60.) O'Bannon's counsel then "paused" the deposition to take up the issue with the court. (*Id*. at 61.)

7

Depositions taken via Zoom videoconference have become increasingly common since the COVID pandemic, and attorneys have adjusted to the requirements and limitations of such a deposition. Had the deposition occurred live, some of the conflicts that arose during the Patty deposition may have been avoided. But O'Bannon chose to conduct the deposition by Zoom, and Defendants' counsel did not object to the Zoom deposition when it was noticed or raise an objection with the court before the deposition was conducted via Zoom. In fact, Defendants' counsel did not object to Patty's deposition being conducted via Zoom until the parties were over an hour into the deposition and O'Bannon's counsel started raising questions as to the documents the witness was looking at. Because Defendants did not object to the use of Zoom in advance of the deposition, it was incumbent upon counsel to appropriately handle documents to be utilized by the witness during the Zoom deposition, e.g., by notifying opposing counsel of the witness's use of such documents. Based on the record, Defendants' counsel appears to have done this. The court therefore will not sanction Defendants for counsel's actions in openly providing documents to Patty to reference during her deposition without objection.

That said, the court recognizes that Defendants' blunder in not producing the complete medical chart before Patty's deposition was compounded by Defendants' counsel's mistake in allowing Patty to review native (not Bates-labeled, previously-produced) documents on his iPhone—all of which led to a squandered deposition. Fed. R. Civ. P. 30(d) allows the court to "impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays or frustrates the fair examination of the deponent." FED. R. CIV. P. 30(d)(2). The court holds Defendants responsible for impeding Patty's deposition by having the witness reference documents that Defendants had not previously produced. For this reason, the court finds an award of sanctions under Fed. R. Civ. P. 30(d)(2) to be appropriate here.

### D. Sanctions Award

An "appropriate sanction" leaves the court much discretion to determine the appropriate sanction under the facts presented. "Courts generally use Rule 30(d)(2) when someone other than the deponent—like an attorney—interrupts the deposition." *Leininger v. United States*, No. 16-2627-DDC, 2020 WL 6395469, at *3 (D. Kan. Nov. 2, 2020) (imposing sanctions under Fed. R. Civ. P. 30(d)(2) because plaintiff's counsel frustrated and impeded the fair cross-examination of the witness by his objections and comments to defense counsel's questions); *Layne Christensen Co. v. Bro–Tech Corp.*, No. 09-2381-JWL-GLR, 2011 WL 4688836, at *8 (D. Kan. Oct. 6, 2011) (applying Fed. R. Civ. P. 30(d)(2) to counsel who violated Fed. R. Civ. P. 30(c)(2) by directing the deponent not to answer); *see also Deville v. Givaudan Fragrances Corp.*, 419 F. App'x 201, 209 (3d Cir. 2011) (affirming magistrate judge's imposition of sanctions pursuant to Fed. R. Civ. P. 30(d)(2) upon finding that attorney "testified on behalf of her witness by way of suggestive speaking objections"); *Craig v. St. Anthony's Med. Ctr.*, 384 F. App'x 531, 533 (8th Cir. 2010) (affirming district judge's award of sanctions pursuant to Fed. R. Civ. P. 30(d)(2) due to "a substantial number of argumentative objections together with suggestive objections and directions to the deponent to refrain from answering questions without asserting a valid justification"). "The district court has discretion to impose appropriate sanctions when a person 'impedes, delays, or frustrates the fair examination of the deponent,' but the district court in no way is obligated to do so." *Nebeker v. Nat'l Auto Plaza*, 643 Fed. App'x 817, 826 (10th Cir. 2016).

As a sanction for Defendants' conduct in failing to timely produce the complete medical chart, thereby frustrating the fair examination of Patty, O'Bannon asks the court to order Defendants to pay (1) the costs of the deposition and the subsequent reopening of that deposition; (2) the costs associated with O'Bannon's retained experts' expedited review of the additional

documents that Defendants disclosed during the deposition; and (3) attorneys' fees if the court determines such an award is warranted—promising "to follow up with a motion itemizing the hours incurred and what rate appears reasonable" if the court should grant attorneys' fees. (ECF 27, at 16.) The court finds that O'Bannon is entitled to recover the court reporter fees and costs incurred for the Patty deposition on September 6 in the amount of $2,041.40 and orders Defendants to tender payment of these fees and costs within 14 calendar days from the date of this order. The court will not award costs associated with O'Bannon's retained experts' expedited review of the additional medical records because the court finds that Defendants' supplemental production was not a violation of Rule 16(f)(1)(C), the experts would have had to review the medical records regardless of when they were produced, and the court extended the schedule so the review did not need to be expedited. The court also will not award attorneys' fees. O'Bannon's motion presented no grounds for granting such an award—no amount or estimate of hours expended on the matter, billing rate, or total attorneys' fees incurred by O'Bannon in connection with this matter. Moreover, the court is not going to expand this dispute between the parties by ordering briefing on attorneys' fees. The court's ruling today aims to temper relations between the parties, not add fuel to the fire.

**IT IS THEREFORE ORDERED** that plaintiff Timothy O'Bannon's Motion for Sanctions (ECF 27) is granted in part and denied in part, as set forth above.

**IT IS FURTHER ORDERED** that Defendants must pay the court reporter fees incurred by O'Bannon during the first deposition of Carmen Patty within 14 calendar days from the date of this order.

**IT IS SO ORDERED.**

Dated November 26, 2024, at Kansas City, Kansas.

s/ Angel D. Mitchell  
Angel D. Mitchell  
U.S. Magistrate Judge

11